IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

THE CITY OF HIGH POINT,          )
NORTH CAROLINA,                  )
                                 )
            Plaintiff,           )
                                 )
     v.                          )     1:19CV540
                                 )
SUEZ TREATMENT SOLUTIONS INC.,   )
FIDELITY AND DEPOSIT COMPANY     )
OF MARYLAND, and                 )
CPPE CARBPM PROCESS & PLANT      )
ENGINEERING S.A.,                )
                                 )
            Defendants.          )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Plaintiff the City of High Point, North Carolina (the "City") brings causes of action for negligence, products liability, breach of warranties, and unfair and deceptive trade practices against Defendant CPPE Carbon Process & Plant Engineering S.A. ("CPPE Carbon").[1] (Doc. 1.) This matter is

_____

[1] Plaintiff also sues Defendant Suez Treatment Solutions, Inc. ("Suez") and Fidelity and Deposit Company of Maryland ("Fidelity"). (Doc. 1.) The court addressed Suez's motion to dismiss in a prior memorandum opinion. City of High Point v. Suez Treatment Sols. Inc., No. 1:19CV540, 2020 WL 1307017, at *1 (M.D.N.C. Mar. 19, 2020). The court only addresses Defendant CPPE Carbon's motion to dismiss here.

before the court on Defendant CPPE Carbon's motion to dismiss, (Doc. 45), which the court will grant in part and deny in part for the reasons set forth in this Memorandum Opinion and Order.

## I. **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On a motion to dismiss, a court must "accept as true all of the factual allegations contained in the complaint . . . ." Ray v. Roane, 948 F.3d 222, 226 (4th Cir. 2020) (citing King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016)). The facts, taken in the light most favorable to Plaintiff, are as follows.

### A. **Factual Background**

A lengthy recitation of the facts is not necessary. The court incorporates the factual details from its Memorandum Opinion and Order denying Defendant Suez's partial motion to dismiss. See City of High Point v. Suez Treatment Sols. Inc., No. 1:19CV540, 2020 WL 1307017, at *1 (M.D.N.C. Mar. 19, 2020). Additional relevant factual findings will be addressed as needed in this Opinion.

Plaintiff the City is a municipality located in North Carolina. (Complaint ("Compl.") (Doc. 1) ¶ 1.) In August 2011, Plaintiff hired Hazen and Sawyer, P.C. ("Hazen") to provide engineering services for an upgrade of the facilities at the

Treatment Plant ("the Project"). (Id. ¶ 15.) Hazen acted as Plaintiff's agent. (Id. ¶ 19.)

Defendant Suez is a corporation organized under the laws of New York with its principal place of business in Virginia. (Id. ¶ 2.) Suez "provides environmental equipment, and design and installation services to companies and municipalities." (Id.)

Defendant CPPE Carbon is a Société Anonyme organized under the laws of Luxembourg, with its principal place of business there as well. (Id. ¶ 4.) CPPE Carbon "supplies air-pollution control equipment, along with design and installation services related to that equipment." (Id.) This Memorandum Opinion only pertains to CPPE Carbon.

Plaintiff contracted with Suez to install a Mercury Removal System ("MRS") in Plaintiff's incinerator (the "Incinerator") in Plaintiff's wastewater treatment plant (the "Treatment Plant"). "Suez represented to Hazen that CPPE needed to be the manufacturer of the portions of the MRS that CPPE was able to supply and design," and "that the inclusion of CPPE's products and its unique 'Kombisorbon' mercury removal process in the MRS would best enable the City to comply with the MACT standards for

the control of mercury emissions."[2] (Id. ¶ 20.) In particular, Suez "represented to Hazen that a granulated activated carbon adsorber ("GAC unit") designed and manufactured by CPPE needed to be part of the MRS." (Id. ¶ 21.) GAC units use a specific process, involving layers of activated carbon granules, to remove pollutants from exhaust gas. (Id.)

Plaintiff alleges that "[n]ormally, the City on a large construction project enters into a professional services contract with a design professional, such as Hazen, for the design of the project, and then enters into a contract with a general contractor for the construction of the project." (Id. ¶ 47.) But here, Plaintiff entered into separate "supply" agreements with equipment suppliers, one of which was with Suez, at Hazen's recommendation. (Id. ¶¶ 48, 50.) Hazen prepared the specifications for the contract bid process, which included that CPPE Carbon, "with which Suez had an existing contractual relationship, be the sole source of much of the equipment in the

_____

[2] Federal standards govern the emissions from sewage-sludge incinerators. (Compl. (Doc. 1) ¶ 14.) A set of standards, "known as the 'Maximum Achievable Control Technology standards' ('the MACT standards') were first proposed for [sewage-sludge incinerators] around October 2010," and took effect in April 2016. (Id.) The MACT standards set limits on mercury emissions. (Id.)

-4-

MRS, including the GAC unit." (Id. ¶ 55.) Suez won in the bidding process, and Plaintiff awarded Suez the contract. (Id. ¶ 61.) Plaintiff alleges, "[w]hen Suez was making its representations to Hazen, and at all times relevant to this litigation, Suez served as a sales force, representative and/or distributor in the United States for CPPE." (Id. ¶ 24.)

After installing the MRS and restarting the Incinerator (together, the "System"), two high-temperature or fire incidents occurred in the Incinerator. Neither Suez nor CPPE Carbon allegedly noticed or reported the increased levels of carbon monoxide. (Id. ¶ 79.) The following day, Suez and CPPE Carbon left the Treatment Plant without instructing Plaintiff or its staff on how to monitor the System. (Id. ¶ 80.) Plaintiff did not have control over the System prior to the first incident. (Id. ¶ 89.) This incident resulted in extensive damage to the System, and the System was inoperable. (Id. ¶¶ 90-92.) Suez and CPPE Carbon allegedly conducted "disorganized, poorly planned, patchwork repair efforts" on the System. (Id. ¶¶ 99-101.) Plaintiff alleges "Suez, either alone or in conjunction with CPPE, also modified the design of the MRS or changed various operating parameters and procedures for the MRS." (Id. ¶ 102.) After the second fire or high-temperature incident, Plaintiff

-5-

installed an alternative system from another company. (Id. ¶¶ 122, 127.)

**B.** **Procedural History**

Plaintiff filed this action in this court on May 23, 2019. (Compl. (Doc. 1).) CPPE Carbon filed a motion to dismiss, (Doc. 45), and a supporting brief, (Mem. of Law in Supp. of Mot. to Dismiss ("CPPE's Br.") (Doc. 46)). Plaintiff responded, (Pl.' Resp. to Mot. to Dismiss ("Pl.'s Resp.") (Doc. 51)), and CPPE Carbon replied (CPPE's Reply (Doc. 56)).

Plaintiff brings four causes of action against CPPE Carbon, numbered causes of action eight through eleven in the Complaint. Plaintiff's Eighth Cause of Action alleges negligence under state law. (Compl. (Doc. 1) ¶¶ 189-203.) Plaintiff's Ninth Cause of Action alleges breach of warranties under state law. (Id. ¶¶ 204-11.) Plaintiff's Tenth Cause of Action is a state law products liability action. (Id. ¶¶ 212-22.) Finally, Plaintiff's Eleventh Cause of Action alleges Unfair and Deceptive Trade Practices under N.C. Gen. Stat. § 75-1.1 (the "UDTPA"). (Id. ¶¶ 223-28.)

The court has already disposed of Suez's partial motion to dismiss. (Doc. 57.)

-6-

## II.  **STANDARD OF REVIEW**

Because this is an action brought under diversity of citizenship jurisdiction, North Carolina substantive law applies. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79-80 (1938).

The standard for a motion to dismiss under Rule 12(b)(6), however, is a procedural matter controlled by federal law. See, e.g., Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007); Wilson v. Dryvit Sys., Inc., 206 F. Supp. 2d 749, 752 (E.D.N.C. 2002), aff'd, 71 F. App'x 960 (4th Cir. 2003) (per curiam). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57). When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true. Iqbal, 556 U.S. at 678.

-7-

Further, this court liberally construes "the complaint, including all reasonable inferences therefrom, . . . in plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

### III. **ANALYSIS**

CPPE Carbon argues Plaintiff's causes of action are all barred, at least in part, by the economic loss rule. (CPPE's Br. (Doc. 46) at 13, 22–23, 25–26.) CPPE Carbon also argues that Plaintiff fails to submit sufficient facts to plausibly allege a UDTPA cause of action or a breach of warranties cause of action. (Id. at 21, 24.)

Plaintiff argues that the economic loss rule cannot bar its causes of action against CPPE Carbon because there was no contract between Plaintiff and CPPE Carbon. (Pl.'s Resp. (Doc. 51) at 13–14.)

CPPE Carbon argues that Plaintiff experienced only economic loss and therefore Plaintiff's cause of action is barred regardless of whether they were in privity. (CPPE's Br. (Doc.

-8-

46) at 17–19; CPPE's Reply (Doc. 56) at 2–6.) CPPE Carbon further argues that Plaintiff "fails to allege that CPPE breached any separate duty to the City imposed by law or that the City does not have available to it a remedy in contract or warranty." (CPPE's Br. (Doc. 46) at 13.)

The court will address CPPE Carbon's challenges to each of Plaintiff's causes of action in turn.

### A. Privity Between Plaintiff and CPPE

CPPE Carbon argues that the economic loss rule applies regardless of whether there is privity between Plaintiff and CPPE Carbon. (CPPE's Br. (Doc. 46) at 14–15 n.2; CPPE's Reply (Doc. 56) at 2–3.) Plaintiff agrees that it and CPPE Carbon are not in privity. (See Pl.'s Resp. (Doc. 51) at 19.)

The court will examine whether the lack of privity between Plaintiff and CPPE Carbon affects any of Plaintiff's causes of action in its discussion of each.

### B. Eighth Cause of Action: Negligence

Plaintiff alleges "CPPE had a duty to use reasonable care in recommending, designing, providing, and installing an MRS that was appropriate for and reasonably safe for its intended use," that it had "a duty to use reasonable care in responding to the first fire," and it "had a duty to use reasonable care in

-9-

the planning and execution of remediation efforts after the first fire." (Compl. (Doc. 1) ¶¶ 190-92.)

Plaintiff also alleges CPPE Carbon breached these duties in the following ways:

> 193. . . . by designing and supplying the MRS incorporating CPPE's products and design, including the GAC unit, for the Project.
> 194. . . . by submitting to Hazen designs and specifications for the Project that resulted in an MRS that was unfit for its intended use.
>
> 195. . . . by designing and providing an MRS that was dangerous, inadequately tested, unreliable, and unfit for its intended use.
>
> 196. . . . by failing to notice rising carbon monoxide levels inside the GAC unit before the first fire.
>
> 197. . . . by failing to instruct the City or its operators at the Treatment Plant regarding the monitoring of the System during the shutdown prior to the first fire, while the System was under Suez's and/or CPPE's control.
>
> 198. . . . by instructing City personnel during the first fire to take actions that exacerbated and prolonged the first fire.
>
> 199. . . . by participating in a disorganized, poorly planned, incomplete, patchwork repair effort after the first fire.

(Id. ¶¶ 193-99.)

CPPE Carbon challenges Plaintiff's negligence cause of action on three grounds: (1) whether the loss Plaintiff suffered was a "purely economic loss," (2) whether CPPE Carbon owed

-10-

Plaintiff a duty by operation of law despite the lack of privity, and (3) whether Plaintiff has contractual or warranty remedies from Suez and/or CPPE Carbon sufficient that the economic loss rule bars the negligence cause of action. (CPPE's Br. (Doc. 46) at 13.) The court will address each argument in turn.

### 1. __Purely Economic Loss__

Under North Carolina law, "[w]hen a component part of a product or a system injures the rest of the product or the system, only economic loss has occurred." Jones v. Caterpillar, Inc., No. 7:16-CV-00331-H, 2017 WL 4865537, at *3 (E.D.N.C. July 11, 2017) (quoting Wilson, 206 F. Supp. 2d at 753).

CPPE Carbon argues that "[t]he City has not alleged any plausible facts demonstrating that the defective MRS, including the GAC Unit caused any damage to property 'other than the product itself' for purposes of the economic loss rule," and therefore, "[b]ecause no person or property other than to the System was damaged, the City experienced only economic loss." (CPPE's Br. (Doc. 46) at 16.)

Plaintiff argues that the determination of what constitutes "a component part of a product or system" is a factual issue. (Pl.'s Resp. (Doc. 51) at 15.) In particular, Plaintiff submits

-11-

that "the two fires extensively damaged the GAC unit and other components of the System," but that "the Court should not accept CPPE's invitation to determine the nature of that damage and the integration of the System's various components." (Id.) The court agrees. The court cannot determine, from the facts alleged, whether the GAC unit should be considered a "component" of the incinerator system. See Jones, 2017 WL 4865537, at *4 ("[T]he court has no basis to determine whether the damage to plaintiff's engines was damage to a component part of a contracted for system or damage to property outside of the contract.").

Construing the facts in the light most favorable to Plaintiff, the court finds Plaintiff plausibly alleges it incurred damage beyond purely economic loss; a determination of whether the economic loss rule might limit or bar recovery will have to be deferred to summary judgment or trial.

### 2. <u>Existence of a Separate Duty Imposed by Law</u>

The court next turns to whether Plaintiff plausibly alleges the existence of a separate duty imposed by law owed by CPPE Carbon to Plaintiff.

"To prevail in a common law negligence action, a plaintiff must establish that the defendant owed the plaintiff a legal

-12-

duty, that the defendant breached that duty, and that the plaintiff's injury was proximately caused by the breach." Martishius v. Carolco Studios, Inc., 355 N.C. 465, 473, 562 S.E.2d 887, 892 (2002). Here, CPPE Carbon only challenges whether it owed Plaintiff a legal duty. The court will thus treat the other three requirements — breach, causation, and damages — as met.

CPPE Carbon argues that, because Plaintiff has only suffered economic loss and there is no privity, CPPE Carbon owes Plaintiff no separate duty of care. (CPPE's Br. (Doc. 46) at 17-18.) Having already found that Plaintiff plausibly alleges harm beyond purely economic loss, the court will focus on whether CPPE Carbon owes Plaintiff a separate duty of care despite there being no privity between the parties.

Plaintiff alleges CPPE Carbon "had a duty to use reasonable care in recommending, designing, providing, and installing an MRS that was appropriate for and reasonably safe for its intended use," and breached that duty "by designing and providing an MRS that was dangerous, inadequately tested, unreliable, and unfit for its intended use," among others. (Compl. (Doc. 1) ¶¶ 190, 194-95.) The allegations of negligence with regard to CPPE Carbon's designing an MRS are better

-13-

understood as products liability allegations. Further, Plaintiff premises its products liability cause of action on the same acts. Because the elements for pleading a negligence action and a products liability action are substantively the same, <u>Red Hill Hosiery Mill, Inc. v. MagneTek, Inc.</u>, 138 N.C. App. 70, 75, 530 S.E.2d 321, 326, <u>disc. review denied</u>, 353 N.C. 268, 546 S.E.2d 112 (2000), that is, duty, breach, causation, and damages, the court will consider the allegations concerning the design of the MRS in its discussion of Plaintiff's products liability cause of action.

What remains of Plaintiff's negligence cause of action are Plaintiff's allegations that CPPE Carbon had a duty to use reasonable care in recommending, providing, and installing an MRS that was appropriate for and reasonably safe for its intended use, and a duty to use reasonable care in responding to the first fire, and Plaintiff's allegations that CPPE Carbon breached those duties by providing an MRS unfit for the intended use, and instructing Plaintiff's personnel to turn on the System's "startup blower," causing the temperature inside the GAC unit to spike, which caused damage to the System. (Compl. (Doc. 1) ¶¶ 83-84, 190-92, 194-98.)

With regard to the lack of privity between CPPE Carbon and Plaintiff, the North Carolina Court of Appeals held that the plaintiff suing the manufacturer of faulty floor trusses for negligence could recover in the absence of a contract between the parties. Lord v. Customized Consulting Specialty, Inc., 182 N.C. App. 635, 637, 643 S.E.2d 28, 29, disc. review denied, 361 N.C. 694, 652 S.E.2d 647 (2007). In coming to this conclusion, the court of appeals "recognize[d] a means of redress for those purchasers who suffer economic loss or damage from improper construction but who, . . . have no basis for recovery in contract." Id. at 641–42, 643 S.E.2d at 32 (quoting Warfield v. Hicks, 91 N.C. App. 1, 10, 370 S.E.2d 689, 694, disc. review denied, 323 N.C. 629, 374 S.E.2d 602 (1988)). That court held that the defendants "had a duty to use reasonable care in performing its promise to provide reliable trusses." Id. at 643, 643 S.E.2d at 33.

"Whether a defendant owes a plaintiff a duty of care is a question of law." Davidson v. Univ. of N.C. at Chapel Hill, 142 N.C. App. 544, 552, 543 S.E.2d 920, 925, disc. review denied, 353 N.C. 724, 550 S.E.2d 771 (2001). "The law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm and

-15-

calls a violation of that duty negligence." <u>Davidson & Jones,</u>
<u>Inc. v. Cty. of New Hanover</u>, 41 N.C. App. 661, 666, 255 S.E.2d
580, 584, <u>disc. review denied</u>, 298 N.C. 295, 259 S.E.2d 911
(1979).

> The duty to protect others from harm arises whenever
> one person is by circumstances placed in such a
> position towards another that anyone of ordinary sense
> who thinks will at once recognize that if he does not
> use ordinary care and skill in his own conduct with
> regard to those circumstances, he will cause danger of
> injury to the person or property of the other.

<u>Id.</u>

However, "in the absence of any control of the place and of
the work there [is] a corresponding absence of any liability
incident thereto. That authority precedes responsibility, or
control is a prerequisite of liability, is a well recognized
principle of law as well as of ethics." <u>Wilkerson v. Norfolk S.</u>
<u>Ry. Co.</u>, 151 N.C. App. 332, 343, 566 S.E.2d 104, 111 (2002)
(quoting <u>Mack v. Marshall Field & Co.</u>, 218 N.C. 697, 700, 12
S.E.2d 235, 237 (1940)).

The court will discuss each of the remaining negligence
actions against CPPE Carbon, beginning with its installation of
the MRS and its response to the first fire, then turning to its
recommendations.

-16-

### a. CPPE Carbon's Providing and Installing of the MRS

The court first finds that the economic loss rule bars Plaintiff's claim that CPPE Carbon was negligent in "providing[] and installing an MRS that was appropriate for and reasonably safe for its intended use," because these same actions serve as the basis for Plaintiff's breach of warranties claim. (Compare Compl. (Doc. 1) ¶ 190, with id. ¶¶ 205–10.) Because the breach of warranty claim "operates to allocate risk," the economic loss rule bars recovery under a negligence claim based on these allegations. Severn Peanut Co. v. Indus. Fumigant Co., 807 F.3d 88, 94 (4th Cir. 2015); see Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 794 (E.D.N.C. 2009) (finding economic loss rule bars recovery when a warranty operates to allocate risk). The court will dismiss Plaintiff's negligence claim to the extent it is based upon CPPE Carbon providing and installing the MRS.

The court will now turn to CPPE Carbon's response to the first fire.

### b. CPPE Carbon's Response to the First Fire

The court first must determine whether CPPE Carbon exercised control over the System.

Plaintiff alleges that "[f]ollowing the first fire, Suez and CPPE had unfettered access to and control over the System to

-17-

determine the cause of the first fire, remediate problems, and repair or replace all aspects of the System needing repair or replacement, including the GAC unit." (Compl. (Doc. 1) ¶ 95.) Thus, because "control is a prerequisite of liability," CPPE Carbon owed Plaintiff a duty of care after the first fire, when it and Suez had "unfettered access to and control over the System."

It follows, therefore, at least under a plausibility standard, that CPPE Carbon owed Plaintiff a duty of care once it was in control of the System in responding to the first fire. Regarding the response to the first fire, Plaintiff alleges CPPE Carbon breached its duty of care by "participating in a disorganized, poorly planned, incomplete, patchwork repair effort," which Plaintiff alleges proximately caused the second fire, which caused damage to the GAC unit as well as other parts of the System. (Id. ¶¶ 199, 201-03.)

At that point, after the first fire, Plaintiff has plausibly alleged CPPE Carbon had a duty to "protect others from harm" because the high-temperature incident in August 2016 was such a circumstance that CPPE Carbon should have "recognize[d] that if [it] d[id] not use ordinary care and skill in [its] own conduct with regard to those circumstances, [it] will cause

-18-

danger of injury to the person or property of the other."[3]
Davidson & Jones, 41 N.C. App. at 666, 255 S.E.2d at 584. The
court finds Plaintiff has plausibly alleged CPPE Carbon had a
duty to use reasonable care in responding to the first fire. See
also Westover Prods., Inc. v. Gateway Roofing Co., 94 N.C. App.
63, 68, 380 S.E.2d 369, 372 (1989) ("Carlisle owed a duty to
Kidde because a reasonable person would have understood that if

---

[3] The court notes that the "sudden emergency doctrine" does
not apply here. "[T]he doctrine of sudden emergency provides a
less stringent standard of care for one who, through no fault of
his own, is suddenly and unexpectedly confronted with imminent
danger to himself or others." Holbrook v. Henley, 118 N.C. App.
151, 153, 454 S.E.2d 676, 677–78 (1995). "An emergency situation
has been defined as that which compels a party to 'act instantly
to avoid a collision or injury.'" Carrington v. Emory, 179 N.C.
App. 827, 830, 635 S.E.2d 532, 534 (2006) (quoting Holbrook, 118
N.C. App. at 154, 454 S.E.2d at 678). The court does not find
that the high-temperature incident qualifies as an "emergency
situation" because no one was compelled to act "instantly," nor
was there threat of collision. Indeed, it appears that this
doctrine is applied most frequently in cases involving vehicular
accidents. See, e.g., Wiggins v. E. Carolina Health-Chowan,
Inc., 234 N.C. App. 759, 767, 760 S.E.2d 323, 328, disc. review
denied, 367 N.C. 793, 766 S.E.2d 656 (2014) ("In North Carolina,
the sudden emergency doctrine has been applied only to ordinary
negligence claims, mostly those arising out of motor vehicle
collisions . . . ."); Fulmore v. Howell, 227 N.C. App. 31, 35,
741 S.E.2d 494, 497, disc. review denied, 367 N.C. 246, 748
S.E.2d 545 (2013); Carrington, 179 N.C. App. at 830, 635 S.E.2d
at 534; see also Goins v. Time Warner Cable S.E., LLC, 258 N.C.
App. 234, 238, 812 S.E.2d 723, 726, disc. review denied, 371
N.C. 569, 819 S.E.2d 388 (2018) (involving a collision between
two cyclists when one hit a downed power line).

-19-

Carlisle did not use reasonable care in its conduct, it would cause injury to Kidde.").

Because Defendant does not challenge the other elements of Plaintiff's negligence claim, the court finds that Plaintiff submits sufficient facts to plausibly allege negligence on the part of CPPE Carbon responding to the first fire.[4] The court finds that this issue is best deferred until either the summary judgment or trial stage.

c.  <u>CPPE Carbon's Recommendations of the MRS</u>

Further, with respect to Plaintiff's allegation that CPPE Carbon had a duty to use reasonable care in recommending an MRS that was appropriate for and reasonably safe for its intended use, the court finds that this claim is better understood as a claim for negligent misrepresentation.

"The tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." <u>Rountree v. Chowan Cty.</u>, 252 N.C. App. 155, 158, 796 S.E.2d 827, 830 (2017) (quoting <u>Raritan River Steel Co. v. Cherry, Bekaert & Holland</u>, 322 N.C. 200, 206, 367

---

[4] Defendant has not challenged the elements of breach and causation and thus those elements are not addressed in this Memorandum Opinion.

-20-

S.E.2d 609, 612 (1988)). A breach of duty giving rise to a claim

of negligent misrepresentation has been defined as:

> One who, in the course of his business, profession or
> employment, or in any other transaction in which he
> has a pecuniary interest, supplies false information
> for the guidance of others in their business
> transactions, [and thus] is subject to liability for
> pecuniary loss caused to them by their justifiable
> reliance upon the information, if he fails to exercise
> reasonable care or competence in obtaining or
> communicating the information.

Rountree, 252 N.C. App. at 160, 796 S.E.2d at 831 (quoting Simms

v. Prudential Life Ins. Co. of Am., 140 N.C. App. 529, 534, 537

S.E.2d 237, 241 (2000), disc. review denied, 353 N.C. 381, 547

S.E.2d 18 (2001) (alteration in original)). "Such a duty

commonly arises within professional relationships." Id.

Further,

> [A] duty to disclose arises where: (1) there is a
> fiduciary relationship between the parties to a
> transaction; or (2) no fiduciary relationship exists
> yet "a party has taken affirmative steps to conceal
> material facts from the other"; or (3) no fiduciary
> relationship exists and "one party has knowledge of a
> latent defect in the subject matter of the
> negotiations about which the other party is both
> ignorant and unable to discover through reasonable
> diligence."

Hutton v. Hydra-Tech, Inc., No. 1:14CV888, 2018 WL 1363842, at

*7 (M.D.N.C. Mar. 15, 2018) (quoting Hardin v. KCS Int'l, Inc.,

199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009)).

-21-

Comparing the case at bar to the <u>Hutton</u> framework, Plaintiff does not allege that CPPE Carbon owed Plaintiff a fiduciary duty, therefore, the first category does not apply. Plaintiff has also not alleged that CPPE Carbon took "affirmative steps to conceal material facts" concerning the fire risks; it appears Plaintiff and Hazen only communicated with Suez. (<u>See, e.g.</u>, Compl. (Doc. 1) ¶¶ 25, 37.) The second category is thus not applicable. Finally, Plaintiff fails to allege that CPPE Carbon and Plaintiff were in negotiations such that the third category applies. Plaintiff therefore fails to allege either a fiduciary duty or a duty to disclose such that CPPE Carbon was negligent in "recommending" the GAC unit. The court finds Plaintiff fails to state a claim for negligent misrepresentation with regard to recommending an MRS.

### 3. **Crescent University**

The court also finds Defendant's reliance on <u>Crescent University City Venture, LLC v. AP Atlantic, Inc.</u>, No. 15 CVS 14745, 2019 WL 3814999, at *15 (N.C. Super. Aug. 14, 2019), misplaced, because the court there concluded that the defendant, which was not in privity with the plaintiff, owed the plaintiff no duty of care to avoid causing the plaintiff <u>purely economic loss</u>. The plaintiff in <u>Crescent University</u> had executed an

-22-

extensive contract with the contractor defendant, which gave the plaintiff "certain rights to oversee the subcontracting process," such as overseeing which subcontract bids the defendant would accept and designating certain businesses from whom the defendant could accept bids at all. Id. at *15. The contract also required the defendant to "ensure that each subcontractor was bound by the terms of the contract documents between Crescent and AP Atlantic and required each subcontract to" preserve Crescent's rights under the contract. Id. Thus, despite the parties not being in privity, the North Carolina business court found that:

> Crescent possessed the power to fully negotiate the
> allocation of the risk it faced in its agreement with
> AP Atlantic and that Crescent was given full
> opportunity to protect itself from economic loss
> incurred as a result of its bargain, whether such loss
> was due to AP Atlantic's conduct or the subpar
> performance of a subcontractor.

Id.; see also New Dunn Hotel, LLC v. K2M Design, LLC, No. 5:20-CV-107-FL, 2020 WL 2575562, at *5 & n.5 (E.D.N.C. May 21, 2020) (distinguishing Crescent University due to Crescent's extensive involvement in the subcontractual process). Here, the court cannot say from Plaintiff's Complaint the extent of Plaintiff's power in the bargaining process with respect to CPPE Carbon was as extensive as Crescent's, such that applying the economic loss

-23-

rule would be appropriate. Further, the court disagrees with the court in _Crescent University_ with respect to other contractual remedies for the reasons stated _infra_. _Crescent University_ is further inapplicable because this court finds Plaintiff has pled losses beyond pure economic loss, the facts and accuracy of which will be addressed at the summary judgment or trial stage. _Crescent University_ is therefore inapplicable.

### 4. **Plaintiff's Contractual and Warranty Remedies**

Finally, CPPE Carbon argues that Plaintiff, CPPE Carbon, Suez, and Hazen "were in the position to negotiate and bargain for risk of loss." (CPPE's Br. (Doc. 46) at 19.) CPPE Carbon also notes that Plaintiff brings breach of warranties causes of action against both CPPE Carbon and Suez. (_Id._ at 19–20.)

CPPE Carbon correctly observes that North Carolina courts take into account the availability of contractual or warranty remedies in conducting an economic loss rule analysis. _See Kelly_, 671 F. Supp. 2d at 794; _Hospira Inc. v. AlphaGary Corp._, 194 N.C. App. 695, 704–05, 671 S.E.2d 7, 14, _disc. review denied_, 363 N.C. 581, 682 S.E.2d 210 (2009); _Lord_, 182 N.C. App. at 641–42, 643 S.E.2d at 32. This inquiry, however, focuses on a plaintiff that brings a tort claim and contractual and/or breach of warranty claims based on the defendant's same actions. _See_

-24-

Lord, 182 N.C. App. at 641-42, 643 S.E.2d at 32. For example, in Lord, there was no contract between the parties, but the North Carolina Court of Appeals held that the plaintiff could proceed on a negligence claim, "recogniz[ing] a means of redress for those purchasers who suffer economic loss or damage from improper construction but who, . . . have no basis for recovery in contract[.]" Id. (omission in original). Lord, as well as Crescent University, thus establish that a tort claim must be based on a distinct breach of duty.

This is the case here. CPPE Carbon's response to the first fire is the only remaining portion of Plaintiff's negligence claim; the court has already found, supra Part III.B.2.a, that Plaintiff's allegations concerning providing and installing the MRS is barred by the economic loss rule due to the availability of a warranty claim. The remainder of Plaintiff's negligence claim is based upon CPPE Carbon's response to the fires, which is not covered by breach of warranty; Plaintiff's access to a breach of warranty remedy thus does not affect its ability to proceed on its negligence claim based upon CPPE Carbon's response to the fires at the Treatment Plant. This court finds Plaintiff has plausibly pled the possibility of a breach of a duty separate from any contractual duties. CPPE Carbon's

-25-

argument on this issue thus fails. The court finds the question of whether separate duties did in fact exist and whether the economic loss rule bars recovery are all matters more appropriately resolved at trial. Plaintiff has plausibly pled duties and injuries separate from the contractual relationship.

### 5. <u>Negligence Conclusion</u>

As previously noted, the court will consider the allegations concerning the design of the MRS in its discussion of Plaintiff's products liability cause of action.

Because Plaintiff has submitted sufficient facts to plausibly allege it has suffered loss beyond economic loss, and that CPPE Carbon owed it a duty of care to the extent CPPE Carbon exercised control over the System in May 2016 and after the first fire, as well as to the extent CPPE Carbon provided, and installed the MRS, the court will deny CPPE Carbon's motion to dismiss Plaintiff's negligence cause of action against CPPE Carbon. The court will grant Defendant's motion to dismiss with respect to Plaintiff's claim that CPPE Carbon was negligent in recommending an MRS, because Plaintiff fails to put forth sufficient facts to plausibly allege a duty to disclose owed by CPPE Carbon to Plaintiff.

-26-

## C.  <u>Ninth Cause of Action: Breach of Warranty</u>

CPPE Carbon asserts two arguments against Plaintiff's breach of warranties cause of action. First, CPPE Carbon argues that, to the extent Plaintiff brings an implied warranty cause of action, it must fail for lack of privity. (CPPE's Br. (Doc. 46) at 21.) Second, to the extent Plaintiff brings a breach of express warranty claim, that claim also must fail because "the City fails to allege any specifics about the terms or understanding of the express warranty" that go beyond conclusory allegations insufficient to support a plausible claim. (<u>Id.</u> at 22-23.)

Plaintiff alleges that CPPE Carbon, through Suez, warranted to Hazen and Plaintiff the following:

> 206. . . . that CPPE's unique Kombisorbon mercury removal process in the MRS would enable the City to comply with the MACT standards for the control of mercury emissions on a continuous basis.

> 207. . . . that the MRS incorporating CPPE's products and design, including the GAC unit, would not catch on fire.

> 208. . . . that the MRS incorporating CPPE's products and design, including the GAC unit, did not require equipment allowing early detection or suppression of fires.

> 209. . . . that the MRS incorporating CPPE's products and design, including the GAC unit, would be safe, despite the non-standard design of the GAC unit

-27-

> supplied by CPPE, which increased fire risks in the
> GAC unit.

(Compl. (Doc. 1) ¶¶ 205–09.) Plaintiff then alleges that "CPPE breached those warranties by designing and providing products, including the GAC unit, that caught fire twice, were unsafe, were unreliable, and were not fit for the City's purpose or any ordinary purpose of the products designed and provided by CPPE." (Id. ¶ 210.) Because the parties seem to agree that Plaintiff's breach of warranties cause of action implicates claims for breach of implied warranty and breach of express warranty, (see CPPE's Br. (Doc. 46) at 21–22; Pl.'s Resp. (Doc. 51) at 19), the court will consider both.

### 1. **Implied Warranty**

N.C. Gen. Stat. § 25-2-314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." That statute further provides that "[g]oods to be merchantable must be at least such as . . . are fit for the ordinary purposes for which such goods are used." Id. § 25-2-314(2)(c). Plaintiff alleges CPPE Carbon provided products which were "were not fit for the City's purpose or any ordinary purpose of the products designed and provided by CPPE." (Compl. (Doc. 1) ¶ 210.)

-28-

To state a claim for a breach of implied warranty, a plaintiff must demonstrate "(1) that the goods in question were subject to an implied warranty of merchantability; (2) that the goods were defective at the time of the sale and as such did not comply with the warranty; (3) that the resulting injury was due to the defective nature of the goods; and (4) that damages were suffered." Williams v. O'Charley's, Inc., 221 N.C. App. 390, 393, 728 S.E.2d 19, 21 (2012); see Goodman v. Wenco Foods, Inc., 333 N.C. 1, 10, 423 S.E.2d 444, 447-48 (1992); Cockerham v. Ward, 44 N.C. App. 615, 624-25, 262 S.E.2d 651, 658, disc. review denied, 300 N.C. 195, 269 S.E.2d 622 (1980).

Additionally, under North Carolina common law, privity of contract is generally required to assert an implied warranty claim. See, e.g., Terry v. Double Cola Bottling Co., 263 N.C. 1, 3, 138 S.E.2d 753, 754 (1964); see also Atl. Coast Mech., Inc. v. Arcadis, Geraghty & Miller of N.C., Inc., 175 N.C. App. 339, 345, 623 S.E.2d 334, 339 (2006). "[T]he North Carolina Products Liability Act eliminated the privity requirement against manufacturers, but only for actions seeking recovery for personal injury or property damage." Atl. Coast Mech., 175 N.C. App. at 345-46, 623 S.E.2d at 339 (citing N.C. Gen. Stat.

Case 1:19-cv-00540-WO-JEP   Document 58   Filed 09/09/20   Page 29 of 57

§ 99B-2(b));[5] <u>AT & T Corp. v. Med. Review of N.C., Inc.</u>, 876 F. Supp. 91, 95 (E.D.N.C. 1995). "Privity is still required in an action for breach of implied warranties that seeks recovery for economic loss." <u>Atl. Coast Mech.</u>, 175 N.C. App. at 346, 623 S.E.2d at 339 (citing <u>Energy Inv'rs Fund, L.P. v. Metric Constructors, Inc.</u>, 351 N.C. 331, 338, 525 S.E.2d 441, 446 (2000)); <u>Gregory v. Atrium Door & Window Co.</u>, 106 N.C. App. 142, 144, 415 S.E.2d 574, 576 (1992)). "The rationale for this exception is that an action seeking to recover damages for economic loss is not a product liability action governed by the Act." <u>Atl. Coast Mech.</u>, 175 N.C. App. at 346, 623 S.E.2d at 339 (citing <u>AT & T</u>, 876 F. Supp. at 95).

Plaintiff agrees that it and CPPE Carbon are not in privity; CPPE Carbon has not challenged the other elements of breach of implied warranty. (<u>See</u> Pl.'s Resp. (Doc. 51) at 19,

---

[5] Section 99B-2 reads:

A claimant who is a buyer, as defined in the Uniform Commercial Code, of the product involved, or who is a member or a guest of a member of the family of the buyer, a guest of the buyer, or an employee of the buyer may bring a product liability action directly against the manufacturer of the product involved for breach of implied warranty; and the lack of privity of contract shall not be grounds for the dismissal of such action.

N.C. Gen. Stat. § 99B-2(b).

22.) Further, the court has already found that Plaintiff has plausibly alleged that it suffered more than pure economic loss. See supra Part III.B.1. Plaintiff therefore may recover on a breach of implied warranty cause of action. The court will therefore deny CPPE Carbon's motion to dismiss Plaintiff's Ninth Cause of Action to the extent it alleges a breach of implied warranty cause of action.

## 2. Express Warranty

In North Carolina, "[b]reach of warranty in a sales contract is an affirmative plea, whether as a defense or ground for the recovery of damages, and the burden is on one who asserts it to establish it by the greater weight of the evidence." Garner v. Kearns, 257 N.C. 149, 151, 125 S.E.2d 390, 392 (1962) (per curiam) (internal quotation marks omitted); see also N.C. Gen. Stat. § 25-2-313(1)(a). Under North Carolina law, the elements of a claim for breach of express warranty in a sales contract are "(1) an express warranty as to a fact or promise relating to the goods, (2) which was relied upon by the plaintiff in making his decision to purchase, (3) and that this express warranty was breached by the defendant." Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Dirs. v. DJF Enters., Inc., 206 N.C. App. 152, 162, 697 S.E.2d 439, 447 (2010)

-31-

(internal quotation marks omitted); see also Ford Motor Credit Co. v. McBride, 257 N.C. App. 590, 596, 811 S.E.2d 640, 646 (2018); Hall v. T.L. Kemp Jewelry, Inc., 71 N.C. App. 101, 104, 322 S.E.2d 7, 10 (1984). To recover damages for a breach, a plaintiff must show that the breach proximately caused the loss sustained. See Rose v. Epley Motor Sales, 288 N.C. 53, 60, 215 S.E.2d 573, 577 (1975); City of Charlotte v. Skidmore, Owings & Merrill, 103 N.C. App. 667, 679, 407 S.E.2d 571, 579 (1991).

In determining whether a seller made an express warranty, courts focus on whether the seller's statements were so regarded by the buyer as to be part of his reason for purchasing the goods. Pake v. Byrd, 55 N.C. App. 551, 552-53, 286 S.E.2d 588, 589-90 (1982). While a seller need not "use formal words such as 'warrant' or 'guarantee' or . . . have a specific intention to make a warranty, . . . an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty." N.C. Gen. Stat. § 25-2-313(2). Moreover, a plaintiff must have relied upon a warrantor's statement in order to establish a breach of an express warranty. Garner, 257 N.C. at 151, 125 S.E.2d at 392; see also Pake, 55 N.C. App. at 553, 286 S.E.2d at 590 ("[W]here the buyer relies on his own skill and

-32-

judgment, thereby essentially disclaiming any warranty, the seller's statements cannot be viewed as the basis of the bargain."). However, "the element of reliance can often be inferred from allegations of mere purchase or use if the natural tendency of the representations made is such as to induce such purchase or use." Bernick v. Jurden, 306 N.C. 435, 448, 293 S.E.2d 405, 413 (1982); see also Kinlaw v. Long Mfg. N.C. Inc., 298 N.C. 494, 500 n.7, 259 S.E.2d 552, 557 n.7 (1979). Finally, to establish a breach of an express warranty, a plaintiff must demonstrate that "the defects complained of existed at the time of the sale." Pake, 55 N.C. App. at 554, 286 S.E.2d at 590 ("The seller's warranty is not his personal guarantee concerning the continuous and future operation of the goods which he has sold." (quotation omitted)); see also Bailey v. LeBeau, 79 N.C. App. 345, 350, 339 S.E.2d 460, 463, aff'd as modified, 318 N.C. 411, 348 S.E.2d 524 (1986).

An express warranty may be a written document, or it may take the form of an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes the basis of the bargain." N.C. Gen. Stat. § 25-2-313(1)(a). Ultimately, however, the question of whether an express warranty existed and was breached is one for the jury. Muther-Ballenger

Case 1:19-cv-00540-WO-JEP   Document 58   Filed 09/09/20   Page 33 of 57

v. Griffin Elec. Consultants, Inc., 100 N.C. App. 505, 509, 397
S.E.2d 247, 249 (1990) ("[W]hether the defendant made or
breached any express warranties . . . is a question of fact to
be decided by the trier of fact."); Warren v. Joseph Harris Co.,
67 N.C. App. 686, 691, 313 S.E.2d 901, 904 (1984) ("Whether the
parties to the transaction have created an express warranty is a
question of fact.").

　　　Regarding the first element of a breach of express warranty
claim — an express warranty as to a fact or promise relating to
the goods — Plaintiff submits that "CPPE, through Suez,
warranted to Hazen and the City that CPPE's unique Kombisorbon
mercury removal process in the MRS would enable the City to
comply with the MACT standards for the control of mercury
emissions on a continuous basis," that the products would not
catch on fire, and did not require equipment allowing early
detection or suppression of fires, and that the products would
be safe. (Compl. (Doc. 1) ¶¶ 206-09.)

　　　CPPE Carbon argues that Plaintiff "fails to allege any
specifics about the terms or understanding of the express
warranty." (CPPE's Br. (Doc. 46) at 22.) The court agrees. While
Plaintiff alleges CPPE Carbon "through Suez," made the
warranties listed in the prior paragraph, Plaintiff "has failed

-34-

to identify any specific words, promises, affirmations, or statements made by [the defendant] to Plaintiff . . . that would create an express warranty." <u>McCauley v. Hospira, Inc.</u>, No. 1:11CV108, 2011 WL 3439145, at *6 (M.D.N.C. Aug. 5, 2011). Plaintiff fails to submit facts as to how CPPE Carbon "warranted, through Suez" the alleged warranties, especially given that Plaintiff never alleges any type of agency relationship between the two such that Suez could speak for CPPE Carbon. <u>See</u> <u>LeBeau</u>, 79 N.C. App. at 350, 339 S.E.2d at 463. Plaintiff's factual allegations are not sufficient to "raise a right to relief above the speculative level" so as to "nudge[] the[] claims across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 555, 570. The court finds that, to the extent Plaintiff brings a breach of express warranty cause of action, Plaintiff submits nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which will] not suffice." <u>Iqbal</u>, 556 U.S. at 678. The court will therefore grant CPPE Carbon's motion to dismiss Plaintiff's Ninth Cause of Action to the extent it alleges an express warranty cause of action.

-35-

### 3. Breach of Warranty Conclusion

Plaintiff plausibly alleges a breach of implied warranty but fails to plausibly allege an express warranty claim. The court will therefore dismiss Plaintiff's Ninth Cause of Action to the extent it alleges a breach of express warranty. The court will deny CPPE Carbon's motion to dismiss Plaintiff's Ninth Cause of Action to the extent it alleges an implied warranty claim with regard to damage beyond the MRS products manufactured by CPPE Carbon.

### D. Tenth Cause of Action: Products Liability

Plaintiff alleges a products liability claim against CPPE Carbon based on negligent design and manufacturing defects, a failure to warn, and a breach of warranty. (Compl. (Doc. 1) ¶¶ 213-20.) Because the court has already addressed both breach of implied and express warranties supra Part III.C.1, the court will not substantively address these allegations in this analysis. This leaves Plaintiff's products liability claim based on negligence.

CPPE Carbon makes three arguments as to why Plaintiff's products liability claim fails. (CPPE's Br. (Doc. 46) at 23.) First, CPPE Carbon argues that Plaintiff fails to allege sufficient facts to satisfy the requirements of pleading a

products liability claim. (Id.) Second, CPPE Carbon argues that Plaintiff's products liability claim is barred by the economic loss rule because Plaintiff has only suffered economic loss. (Id.) Third, it attacks Plaintiff's products liability claim based on breach of warranties, because Plaintiff only asserts a breach of implied warranties. (Id.)

CPPE Carbon's second argument fails, because the court has already determined that Plaintiff plausibly alleges property damage beyond economic loss. See supra Part III.B.1. Further, concerning CPPE Carbon's third argument regarding Plaintiff's implied warranty claim, the court addressed this issue in its discussion of Plaintiff's breach of warranty cause of action. Supra Part III.C.1. This argument also fails; the court has determined that Plaintiff plausibly alleges property damage beyond economic loss, meaning the personal property exception for breach of implied warranty that forgoes the privity requirement applies and Plaintiff may proceed on its implied warranties claim.

CPPE Carbon's first argument, that Plaintiff fails to allege sufficient facts to plausibly allege a negligence-based products liability cause of action, is the only remaining issue.

## 1. Design and Manufacturing Defects

"In the usual case, where a product liability claim sounds in tort, [as is the case here], the plaintiff must prove duty, breach, causation, and damages." Sparks v. Oxy-Health, LLC, 134 F. Supp. 3d 961, 985 (E.D.N.C. 2015) (citing Bryant v. Adams, 116 N.C. App. 448, 465, 448 S.E.2d 832 (1994), disc. review denied, 339 N.C. 736, 454 S.E.2d 647 (1995)). Those elements are satisfied where the plaintiff demonstrates "(1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." Red Hill Hosiery, 138 N.C. App. at 75, 530 S.E.2d at 326; see also Farrar & Farrar Farms v. Miller-St. Nazianz, Inc., 477 F. App'x 981, 984 (4th Cir. 2012); Cahoon v. Edward Orton, Jr. Ceramic Found., No. 2:17-CV-63-D, 2020 WL 918753, at *7 (E.D.N.C. Feb. 24, 2020).

The duty owed by a defendant to a plaintiff is determined by the relationship between them. Kientz v. Carlton, 245 N.C. 236, 240, 96 S.E.2d 14, 17 (1957). "[A] manufacturer is under a duty to those who use his product to exercise that degree of care in its design and manufacture that a reasonably prudent man would use in similar circumstances." McCollum v. Grove Mfg. Co., 58 N.C. App. 283, 287, 293 S.E.2d 632 (1982), aff'd, 307 N.C.

-38-

695, 300 S.E.2d 374 (1983); see Indura S.A. v. Engineered
Controls Int'l Inc., No. 1:10CV457, 2011 WL 3862083, at *23
(M.D.N.C. Sept. 1, 2011); Carlton v. Goodyear Tire & Rubber Co.,
413 F. Supp. 2d 583, 588 (M.D.N.C. 2005); Red Hill Hosiery, 138
N.C. App. at 75, 530 S.E.2d at 326. Design defects and
manufacturing defects are thus subject to the same test under
North Carolina law: "A products liability claim grounded in
negligence requires the plaintiff prove (1) the product was
defective at the time it left the control of the defendant, (2)
the defect was the result of defendant's negligence, and (3) the
defect proximately caused plaintiff damage." Red Hill Hosiery,
138 N.C. App. at 75, 530 S.E.2d at 326.

    "A product defect may be shown by evidence a specific
defect existed in a product. Additionally, when a plaintiff does
not produce evidence of a specific defect, a product defect may
be inferred from evidence the product was put to its ordinary
use and the product malfunctioned." DeWitt v. Eveready Battery
Co., 144 N.C. App. 143, 150, 550 S.E.2d 511, 516 (2001), aff'd,
355 N.C. 672, 565 S.E.2d 140 (2002).

    Under North Carolina law, proximate cause is defined as:

    a cause which in natural and continuous sequence,
    unbroken by any new and independent cause, produced
    the plaintiff's injuries, and without which the
    injuries, would not have occurred, and one from which

-39-

a person of ordinary prudence could have reasonably
foreseen that such a result, or consequences of a
generally injurious nature, was probable under all the
facts as they existed.

Adam v. Mills, 312 N.C. 181, 192–93, 322 S.E.2d 164, 172 (1984)

(quoting Hairston v. Alexander Tank & Equip. Co., 310 N.C. 227,

233, 311 S.E.2d 559, 565 (1984)).

Proximate cause is an inference of fact, to be drawn
from other facts and circumstances. If the evidence be
so slight as not reasonably to warrant the inference,
the court will not leave the matter to the speculation
of the jury.

It is only when the facts are all admitted and only
one inference may be drawn from them that the court
will declare whether an act was the proximate cause of
an injury or not. But that is rarely the case. Hence,
what is the proximate cause of an injury is ordinarily
a question for the jury. . . . It is to be determined
as a fact, in view of the circumstances of fact
attending it.

Hampton v. Hearn, ___ N.C. App. ___, 838 S.E.2d 650, 655 (2020)

(quoting Conley v. Pearce-Young-Angel Co., 224 N.C. 211, 214, 29

S.E.2d 740, 742 (1944)) (internal quotation marks and citations

omitted).

First, regarding a design defect, Plaintiff further alleges

that CPPE Carbon "failed to use a safer design that was

practical, feasible, and otherwise reasonable and that would

have prevented or substantially reduced the risk of harm posed

by CPPE's equipment," and therefore "CPPE's products, including

-40-

the GAC unit, were defective and/or inadequately designed due to CPPE's negligence." (Compl. (Doc. 1) ¶¶ 217-18.) The court is satisfied given that "a product defect may be inferred from evidence the product was put to its ordinary use and the product malfunctioned," DeWitt, 144 N.C. App. at 150, 550 S.E.2d at 516, that Plaintiff has, for the purposes of a motion to dismiss, pled sufficient facts to plausibly allege a product defect.

Second, Plaintiff alleges CPPE Carbon had a duty to use reasonable care in designing and manufacturing those products. (Compl. (Doc. 1) ¶¶ 213-15.) Given "[a] manufacturer must use reasonable care in the design and manufacture of products, and this includes the duty to perform reasonable tests and inspections to discover latent hazards," Nicholson v. Am. Safety Util. Corp., 124 N.C. App. 59, 65, 476 S.E.2d 672, 676 (1996), aff'd as modified, 346 N.C. 767, 488 S.E.2d 240 (1997) (internal quotations omitted), the court is satisfied, for the purposes of considering a motion to dismiss, that CPPE Carbon had a duty to use at least reasonable care in its design and manufacturing the GAC unit and MRS.

Finally, the court finds Plaintiff puts forth sufficient facts to plausibly allege that the design defect here proximately caused Plaintiff harm. Plaintiff alleges the "[t]he

-41-

first fire was proximately caused by CPPE's negligent actions."
(Compl. (Doc. 1) ¶ 200.) Specifically,

> [t]he GAC unit designed and manufactured by CPPE . . .
> had a non-standard design . . . . In particular, the
> carbon layers in the GAC unit manufactured by CPPE
> were aligned vertically rather than horizontally. The
> vertical alignment of the carbon layers affected
> carbon distribution and gas flow through the GAC unit
> and increased the likelihood of a fire or high-
> temperature incident within the GAC unit.

(Id. ¶ 30.) Further, Plaintiff alleges CPPE Carbon's GAC units
had a history of "catching fire or otherwise suffering high-
temperature incidents." (Id. ¶ 26.) The court finds these facts
are sufficient to reasonably infer that the nonstandard design
was the proximate cause of the fires here.

Plaintiff also alleges that it "undertook an independent
investigation and analysis of the two fire events so that the
City could ensure that it would eventually have a safe and fully
operational system," (id. ¶ 118), but never says what the
results of that investigation were, beyond that it learned of
other fires or high-temperature incidents involving GAC units
manufactured by CPPE Carbon, (id. ¶ 119). Nevertheless, the
court finds that Plaintiff's allegations are sufficient at this
stage to plausibly allege proximate causation; indeed, proximate
causation is generally best determined by a jury. See Conley,
224 N.C. at 214, 29 S.E.2d at 742.

-42-

Having found that Plaintiff submits sufficient facts to plausibly allege a design-defect products liability claim, the court will deny CPPE Carbon's motion to dismiss as to Plaintiff's design-defect products liability claim.

Regarding a manufacturing defect, however, the only references Plaintiff makes to a manufacturing defect is its allegations that CPPE Carbon "designed and manufactured" the MRS, that it had a duty to use reasonable care in manufacturing its products, and that it had a duty to use "utmost caution and cause" in manufacturing the products. The remaining allegations, however, relate only to design defects. There are no allegations that the MRS and/or the GAC unit contained a defect from manufacturing and no allegations concerning the manufacturing process. The court therefore finds that, to the extent Plaintiff alleges a manufacturing defect products liability claim, the court will grant CPPE Carbon's motion to dismiss.

### 2. <u>Failure to Warn</u>

Plaintiff also alleges that "CPPE acted unreasonably in failing to warn or instruct the City regarding the dangerous propensities of the products provided by CPPE, including the GAC unit." (Compl. (Doc. 1) ¶ 221.)

Under North Carolina law:

(a) No manufacturer or seller of a product shall be
held liable in any product liability action for a
claim based upon inadequate warning or instruction
unless the claimant proves that the manufacturer or
seller acted unreasonably in failing to provide such
warning or instruction, that the failure to provide
adequate warning or instruction was a proximate cause
of the harm for which damages are sought, and also
proves one of the following:

    (1) At the time the product left the control of
    the manufacturer or seller, the product,
    without an adequate warning or instruction,
    created an unreasonably dangerous condition
    that the manufacturer or seller knew, or in
    the exercise of ordinary care should have
    known, posed a substantial risk of harm to a
    reasonably foreseeable claimant.

    (2) After the product left the control of the
    manufacturer or seller, the manufacturer or
    seller became aware of or in the exercise of
    ordinary care should have known that the
    product posed a substantial risk of harm to a
    reasonably foreseeable user or consumer and
    failed to take reasonable steps to give
    adequate warning or instruction or to take
    other reasonable action under the
    circumstances.

N.C. Gen. Stat. § 99B-5(a); see Lightfoot v. Georgia-Pacific

Wood Prods., LLC, 441 F. Supp. 3d 159, 170 (E.D.N.C. 2020),

appeal docketed, No 20-1334 (4th Cir. Mar. 19, 2020). There is

also a common law duty to warn: "a manufacturer is under an

obligation to provide warnings of any dangers associated with

the product's use 'sufficiently intelligible and prominent to

reach and protect all those who may reasonably be expected to

-44-

come into contact with [the product].'" <u>Nicholson</u>, 124 N.C. App. at 65, 476 S.E.2d at 676 (quoting <u>Ziglar v. E. I. Du Pont De Nemours & Co.</u>, 53 N.C. App. 147, 155, 280 S.E.2d 510, 516, <u>disc. review denied</u>, 304 N.C. 393, 285 S.E.2d 838 (1981)); <u>Lightfoot</u>, 441 F. Supp. 3d at 170.

> Liability arises for a supplier of a product, "if the supplier (a) knows, or from facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be so."

<u>Lightfoot</u>, 441 F. Supp. 3d at 170-71 (quoting <u>Stegall v. Catawba Oil Co. of N.C.</u>, 260 N.C. 459, 464, 133 S.E.2d 138, 142 (1963)). Proximate causation is also required. <u>Stegall</u>, 260 N.C. at 464, 133 S.E.2d at 142.

Because proximate causation is dispositive on this issue, the court will address it first. Plaintiff again fails to allege any facts that would allow the court to draw the reasonable inference that CPPE Carbon's failure to warn of the increased fire risk caused Plaintiff harm. Plaintiff only alleges that "CPPE acted unreasonably in failing to warn or instruct the City regarding the dangerous propensities of the products provided by CPPE, including the GAC unit." (Compl. (Doc. 1) ¶ 221.) Because

Plaintiff's allegations fail to "allow[] the court to draw the
reasonable inference that the defendant is liable" and fails to
demonstrates "more than a sheer possibility that a defendant has
acted unlawfully," Iqbal, 556 U.S. at 678 (citing Twombly, 550
U.S. at 556–57), the court will grant CPPE Carbon's motion to
dismiss Plaintiff's products liability cause of action to the
extent it is based on a failure to warn.

### 3.    Breach of Warranty

Plaintiff also alleges that CPPE Carbon's products carried
a warranty, which ran to and benefited Plaintiff, and that CPPE
Carbon breached that warranty. (Compl. (Doc. 1) ¶¶ 219–20.) The
court finds that this breach of warranty claim merely restates
Plaintiff's Ninth Cause of Action for breach of warranty,
discussed supra, and therefore need not be discussed here.

### 4.    Products Liability Conclusion

The court finds Plaintiff submits sufficient facts to
plausibly allege a negligence-based design claim, and thus will
deny CPPE Carbon's motion to dismiss this claim to the extent
Plaintiff alleges a negligence-based design claim.

The court also finds Plaintiff fails to submit sufficient
facts to plausibly allege a negligence-based manufacturing
claim, or a failure-to-warn claim. The court will grant CPPE

Carbon's motion to dismiss this cause of action based on those grounds. To the extent this cause of action alleged breach of warranties, that cause of action is dealt with under Plaintiff's Ninth Cause of Action for breach of warranties; Plaintiff plausibly alleges a breach of implied warranty but fails to plausibly allege an express warranty claim. The court thus grants CPPE Carbon's motion to dismiss Plaintiff's express warranty claim and denies the motion with respect to Plaintiff's implied warranty claim.

> ### E. Eleventh Cause of Action: Unfair and Deceptive Trade Practices

Pursuant to N.C. Gen. Stat. § 75-1.1, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a violation of N.C.G.S. § 75-1.1, a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). "The determination of whether an act or practice is an unfair or deceptive practice that violates N.C.G.S. § 75-1.1 is a question of law for the court." Id. Further, "[w]here an unfair or deceptive practice claim is based

-47-

upon an alleged misrepresentation by the defendant, the plaintiff must show 'actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains." Sunset Beach Dev., LLC v. AMEC, Inc., 196 N.C App. 202, 211, 675 S.E.2d 46, 53 (2009) (quoting Tucker v. Blvd. at Piper Glen LLC, 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002)).

"Under North Carolina law, a breach of warranty alone is insufficient to state a UDTPA claim. Rather, a party must allege some type of egregious or aggravating circumstances." Kelly, 671 F. Supp. 2d at 799 (internal citations omitted) (collecting cases).

CPPE Carbon puts forth three arguments for why Plaintiff fails to state a UDTPA claim. First, CPPE Carbon contends that Plaintiff "does not allege any egregious or aggravating facts," and in fact "merely recasts its breach of warranty and negligence claims in support of its UDTP claim." (CPPE's Br. (Doc. 46) at 24.) Second, CPPE Carbon argues that Plaintiff never alleges "'actual reliance' on any purported misrepresentations as to CPPE," only Suez. (Id. at 25.) Finally, CPPE Carbon asserts that "the City's UDTP claim is also barred

-48-

by the [economic loss rule] because its negligence and products liability claims are barred by the [economic loss rule]." (Id.)

Plaintiff responds that it has enumerated several "egregious and aggravating facts, such as CPPE Carbon using the City as an unknowing, unwilling test subject to develop CPPE Carbon's untested GAC unit." (Pl.'s Resp. (Doc. 51) at 23; Compl. (Doc. 1) ¶ 225.)

### 1. Economic Loss Rule

The court has already found that Plaintiff has plausibly alleged that it suffered more than pure economic loss, see supra Part III.B.1, thus the economic loss rule does not bar Plaintiff's UDTPA claim.

### 2. Failure to Allege Egregious or Aggravating Facts

#### a. Plaintiff's Allegations

Turning to Plaintiff's alleged egregious or aggravating facts, "[e]gregious or aggravating circumstances must be alleged before the provisions of the [UDTPA] may take effect. Aggravating circumstances include conduct of the breaching party that is deceptive. Finally, in determining whether a particular act or practice is deceptive, its effect on the average consumer is considered." Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 787 (4th Cir. 2012) (alteration in original) (quoting Becker v.

-49-

Graber Builders, Inc., 149 N.C. App. 787, 794, 561 S.E.2d 905, 910-11 (2002) (internal citations omitted)). An act is deceptive if it has a tendency or capacity to deceive. Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001); Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403, aff'd as modified, 302 N.C. 539, 276 S.E.2d 397 (1981). An act is unfair "when it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of . . . power or position." Carcano v. JBSS, LLC, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009) (quotation and emphasis omitted).

Here, Plaintiff alleges CPPE Carbon engaged in practices including:

> a. Misrepresenting its experience with the MACT standards for SSIs and its ability to provide an MRS that would comply with the MACT standards for SSIs.

> b. Misrepresenting that the MRS incorporating CPPE's products and design, including the GAC unit, would be safe and reliable, and would meet the MACT standards for mercury emissions.

> c. Mispresenting its ability to provide the City with a safe, functional, and reliable System.

> d. Misrepresenting its experience with mercury removal at SSIs.

> e. Misrepresenting the cost of the MRS incorporating CPPE's products and design, including the GAC unit.

-50-

   f. Misrepresenting that the MRS incorporating
CPPE's products and design, including the GAC unit,
would not catch fire.

   g. Misrepresenting the lack of need for early
detection or fire suppression measures with the MRS
incorporating CPPE's products and design, including
the GAC unit.

 (Compl. (Doc. 1) ¶ 225.)

  Plaintiff also alleges CPPE Carbon engaged in practices

including:

   h. Concealing the non-standard design of the MRS
incorporating CPPE's products and design, including
the GAC unit.

   i. Concealing the increased fire risk created by
the non-standard design of the MRS incorporating
CPPE's products and design, including the GAC unit.

   j. Concealing the history of fires and high-
temperature incidents at other facilities with
equipment similar or identical to the equipment
provided to the City.

   k. Concealing the inherent dangers of the MRS
incorporating CPPE's products and design, including
the GAC unit.

   l. Concealing the fact that its disorganized,
poorly planned, incomplete, patchwork repair effort
after the first fire would not prevent future fires in
the MRS incorporating CPPE's products and design,
including the GAC unit.

(Id.)

  Plaintiff finally alleges CPPE Carbon used the "City as a

guinea pig to design, test, and troubleshoot the MRS." (Id.)

b.  **Analysis**

Because breach of warranty may not serve as the basis for a UDTPA claim, Kelly, 671 F. Supp. 2d at 799, Plaintiff may not use the same allegations as the basis for both its breach of warranties claim and its UDTPA claim.

Comparing the allegations in these two claims reveals that Plaintiff uses the following allegations for both claims, and therefore, these claims may not serve as support for Plaintiff's UDTPA claim. First, in Plaintiff's breach of warranties claim, Plaintiff alleges CPPE Carbon "warranted to Hazen and the City that CPPE's unique Kombisorbon mercury removal process in the MRS would enable the City to comply with the MACT standards for the control of mercury emissions on a continuous basis," that the MRS would not catch on fire, that there was no need for a fire detection or suppression system, and that the design of the MRS would be safe despite the nonstandard design of the GAC unit. (Compl. (Doc. 1) ¶¶ 206–09.) Plaintiff therefore cannot base its UDTPA claim on any misrepresentations concerning the functioning and safety of the MRS and the GAC unit. (See id. ¶ 225(b), (f)–(g).)

This leaves Plaintiff's allegations regarding CPPE Carbon's representations concerning its experience and its ability to

-52-

provide a working, reliable, and safe MRS, (id. ¶ 225(a), (c)-(d)).

Here, the court finds that Plaintiff fails to submit any facts concerning any representations made by CPPE Carbon to Plaintiff. The Complaint only includes one allegation of a specific instance of representations made by CPPE Carbon. Plaintiff alleges that "SUEZ made [its] representation [about the MRS not needed fire detection or suppression equipment] as a result of representations and warranties made by CPPE, which CPPE made to induce potential purchasers, such as the City, to purchase a GAC unit manufactured by CPPE." (Compl. (Doc. 1) ¶ 31.) This one allegation does not contain facts that demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57). Thus, Plaintiff's UDTPA claim fails to the extent it relies on misrepresentations made by CPPE Carbon.[6]

---

[6] Because the issue of actual reliance is only implicated in the misrepresentation context for a UDTPA claim, see, e.g., Caper Corp. v. Wells Fargo Bank, N.A., 578 F. App'x 276, 287 (4th Cir. 2014); Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013), and the court finds that Plaintiff fails to allege facts sufficient to plausibly allege unfair and deceptive misrepresentation, the court need not reach the issue of whether Plaintiff actually relied on the representations or not.

For a concealment or omission to be actionable under the UDTPA, the defendant must have had a duty to disclose that which was concealed or omitted. See Kron Med. Corp. v. Collier Cobb & Assocs., Inc., 107 N.C. App. 331, 341, 420 S.E.2d 192, 198, disc. review denied, 333 N.C. 168, 424 S.E.2d 910 (1992) (finding that a plaintiff who did not allege fraud but alleged an existing fiduciary duty stated a claim for unfair and deceptive trade practices based on the defendant's omissions).

As previously stated,

> a duty to disclose arises where: (1) there is a fiduciary relationship between the parties to a transaction; or (2) no fiduciary relationship exists yet "a party has taken affirmative steps to conceal material facts from the other"; or (3) no fiduciary relationship exists and "one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through reasonable diligence."

Hutton, 2018 WL 1363842, at *7 (quoting Hardin, 199 N.C. App. at 696, 682 S.E.2d at 733).

As the court found supra, Plaintiff fails to submit sufficient facts to plausibly allege that any of these three categories apply to its relationship with CPPE Carbon such that CPPE Carbon had a duty to disclose. Plaintiff therefore fails to allege either a fiduciary duty or a duty to disclose such that CPPE Carbon's failure to tell Plaintiff about the history of

-54-

fires qualifies as an unfair or deceptive trade practice. Without facts supporting some sort of duty to disclose, Plaintiff may not base its UDTPA claim on concealments. The court will grant CPPE Carbon's motion to dismiss on this issue.

Plaintiff's allegation that CPPE Carbon used Plaintiff "as a guinea pig to design, test, and troubleshoot the MRS incorporating CPPE's products and design, including the GAC unit," (Compl. (Doc. 1) ¶ 174.o.), also fails for want of a plausible factual basis. Taking "guinea pig" to mean that Plaintiff was one of the first to use CPPE Carbon's MRS and GAC unit, this is the only instance in which Plaintiff alleges it was a "guinea pig." Though Plaintiff alleges that the design of the MRS was "largely untested," (id. ¶ 46), as CPPE Carbon correctly points out, Plaintiff's own allegations belie this notion. Plaintiff alleges that, as part of its investigation into the second fire, it "learned of other fires or high temperature events in GAC units manufactured by CPPE and installed by Suez, in addition to the Mattabassett fire." (Id. ¶ 119.)

Further, even taking as true that Plaintiff was used as a guinea pig, Plaintiff fails to allege how this proximately caused the harm it suffered, or that this is even an unfair or

-55-

deceptive trade practice at all. It is not enough that a practice be unfair or deceptive; it must also proximately cause Plaintiff harm. See Sunset Beach Dev., 196 N.C App. at 211, 675 S.E.2d at 54. Without any allegations as to how this treatment of Plaintiff proximately caused Plaintiff harm, the court finds that Plaintiff fails to submit sufficient facts to "allow[] the court to draw the reasonable inference that the defendant is liable" and to demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556-57).

### 3. UDTPA Conclusion

Because Plaintiff failed to submit sufficient facts regarding misrepresentations, omissions, or that CPPE Carbon used Plaintiff as a guinea pig to plausibly state a UDTPA claim, the court will grant CPPE Carbon's motion to dismiss Plaintiff's Eleventh Cause of Action.

## IV. CONCLUSION

For the reasons set forth above, the court finds that Defendant's motion will be denied in part and granted in part.

**IT IS THEREFORE ORDERED** that Defendant CPPE Carbon Process & Plant Engineering's motion to dismiss, (Doc. 45), is **GRANTED IN PART AND DENIED IN PART** in that the motion is **DENIED** with

-56-

respect to Plaintiff's Eighth Cause of Action, Ninth Cause of Action to the extent it alleges an implied breach of warranty, and Tenth Cause of Action to the extent it alleges breach of implied warranty and a negligence-based design defect, and is **GRANTED** with respect to Plaintiff's Ninth Cause of Action to the extent it alleges a breach of express warranty, Tenth Cause of Action to the extent is alleges a manufacturing defect, a failure to warn, and a breach of express warranty, and Eleventh Cause of Action.

This the 9th day of September, 2020.

_____
United States District Judge